Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2392 | **DATE** | 6/12/2001 |
| **CASE TITLE** | Nodal Systems Corp. vs. Joseph M. Burke, etal | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Nodel's Rule 60(b) motion to vacate our previous dismissal order (6-1) is denied. The parties shall bear their own costs associated with this motion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JUN 13 2001 | |
| | Notified counsel by telephone. | date docketed | 10 |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 6/12/2001 date mailed notice | |
| GL courtroom deputy's initials | FILED FOR DOCKETING 01 JUN 13 AM 10:59 Date/time received in central Clerk's Office | GL mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NODAL SYSTEMS CORPORATION, an Illinois Corporation, <br><br> Plaintiff, <br><br> v. <br><br> JOSEPH M. BURKE, an individual; <br> WILLIAM J. RUSSO, an individual; <br> LEONARD P. HORAN, an individual; <br> RUSSO & BURKE, ATTORNEYS AT LAW, a New York Partnership, <br><br> Defendants. | No. 00 C 2392 <br><br> **DOCKETED** <br> JUN 1 3 2001 |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, Chief Judge:

Plaintiff Nodal Systems Corporation ("Nodal") has moved pursuant to Federal Rule of Civil Procedure 60(b)(3) to vacate our order granting voluntary dismissal of this case, claiming that the defendants fraudulently induced Nodal's assent to settlement by falsely promising to return certain documents to Nodal. In the alternative, Nodal asks that we modify the dismissal order to require the defendants to return Nodal's files and suspend further performance under the settlement agreement until defendants comply. For the following reasons we <u>deny</u> the motion.

### Background

This suit arose out of a fee dispute between Nodal and its principal Robert Emerald ("Emerald") and Nodal's former attorneys Joseph M. Burke ("Burke"), William J. Russo ("Russo"), Leonard P. Horan ("Horan") and the New York law partnership of Russo & Burke (collectively, "defendants"). On October 18, 2000, defendants executed a document entitled "Mutual Release and Discharge" providing for a mutual release of all claims arising from the contractual relationship between Nodal and defendants. <u>See</u> Pl.'s Ex. 3, Release at 1. Defendants specifically agreed to



release their claims against Emerald in consideration of Emerald's promise to pay them ten percent of a certain sum upon his execution of the release, in addition to his delivery of a promissory note for the remainder.[1] *Id.* The release also contained Emerald's promise on behalf of Nodal to execute a stipulation dismissing this action; Nodal's suit was voluntarily dismissed with prejudice pursuant to Rule 41(a)(1) on October 20, 2000. *See id.* at 2.

The release provided that its execution "operates as a full and final satisfaction of any claims by Plaintiff and R&B Defendants against one another or their Agents arising in any way out of the aforementioned matters." *Id.* In addition, it stated that:

> [n]o promises or inducements which are not herein expressed have been offered or made. This Release and Discharge is executed without reliance upon any statement or representation made by any person, firm, or corporation hereby released or their attorney or any of them as to the legal effect of this Release and Discharge." *Id.*

The release contained an acknowledgment that the parties read it, understood it, and executed it "of their own free act and volition with consultation from counsel." *Id.* at 3.

Emerald did not execute the release, promissory note, or Affidavit of Confession of Judgment (securing the promissory note) until December 13, 2000. *See* Pl.'s Exs. 2A, 2B, 2C, 3, 4, and 5. On December 18, 2000, Richard Samdal (attorney for Nodal and Emerald) sent a letter to Burke apologizing for the delay in tendering the ten percent down payment and first installment payment under the promissory note. *See* Pl.'s Ex. 2D. Samdal wrote:

> In connection with this, I wanted to confirm your agreement to return any original documents belonging to Mr. Emerald and/or Nodal Systems Corporation, Inc. You had indicated that Mr. Horan had performed much of my client's corporate work, and that you had retained counsel in Alabama relating to some litigation where original Affidavits had been obtained, and in some instances filed. I would appreciate it if, in an effort to close this matter completely, you would confirm to

---

[1] Although the parties agreed to keep the settlement terms confidential, their briefs and the accompanying exhibits regarding Nodal's motion to vacate (which were not filed under seal) disclose the amount of settlement. Out of an abundance of caution, we will not discuss the exact amount in this opinion.

2

> me in writing that you will retrieve all original documents either in your possession or in possession of your local counsel and return them to Mr. Emerald at your earliest convenience. Please accept this letter as confirmation that Mr. Emerald will reimburse your reasonable expenses in gathering and shipping those documents. I would also appreciate a written confirmation from you that all originals in your possession have been shipped when you have finished gathering and mailing the documents. *Id.*

Samdal concluded by saying that he "looked forward to seeing [Burke's] written confirmation in the near future." *Id.*

On January 24, 2001, Samdal sent facsimile signatures of original documents to Burke and mentioned that he "still ha[d] not heard a response from you regarding the status of your promise to return to my client all of his original documents." *See* Pl.'s Ex. 2E. The next day, Burke wrote to local counsel in Alabama to request that local counsel send to Samdal any original documents relating to Emerald/Nodal's business or litigation. *See* Pl.'s Ex. 7. Burke also returned two of Nodal's computer disks to Samdal, informed Samdal that defendants did not have any original Nodal documents, recounted his efforts to locate original documents (i.e., speaking to Horan and contacting local counsel in Alabama) and passed along Horan's suggestion that Nodal contact attorneys in Delaware and in the Carribean who might have documents. *See* Pl.'s Ex. 8.

After Emerald received a default notice regarding a payment he owed defendants under the promissory note, he wrote to Burke on March 8, 2001, expressing concern about Burke's claim that defendants did not have any of Nodal's documents. *See* Pl.'s Ex. 9. Emerald listed many examples of documents that had not been returned to him and informed Burke that "[y]our obligation to return documents is part of the arrangement that we agreed upon, and I expect you to live up to your end of the deal." Burke responded immediately that the settlement agreement was not contingent upon the return of documents, reiterating that defendants did not have originals of the documents described by Emerald, and stating that defendants:

have many boxes of documents in storage accumulated over the six or so years of representing you and your companies. We will make them available to you for inspection at any time convenient to you and us. You can select whatever documents you want and we will have them copied and shipped to you at your expense. Pl.'s Ex. 10.

On March 15, 2001, Nodal filed the instant motion asking us to declare the settlement void and vacate our previous dismissal order.

### Analysis

Federal Rule of Civil Procedure 60(b) provides for relief from judgments. Fed. R. Civ. P. 60. Though Rule 60(b) motions should be liberally construed, see *Ervin v. Wilkinson*, 701 F.2d 59, 61 (7th Cir. 1983), it is "well-established" that this kind of relief is "an extraordinary remedy and is granted only in exceptional circumstances." See *Harold Washington Party v. Cook County, Illinois Democratic Party*, 984 F.2d 875, 879 (7th Cir. 1993); *Di Vito v. Fid. & Deposit Co. of Md.*, 361 F.2d 936, 938 (7th Cir. 1966). Rule 60(b)(3) lists "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party" as reasons for which a court may relieve a party from a final judgment or order. Fed. R. Civ. P. 60(b)(3). A party seeking to vacate a judgment on the grounds that fraud and misrepresentation were used to procure the settlement upon which that judgment is based, must establish the existence of such fraud by clear and convincing evidence. See *Ervin, supra*, 701 F.2d at 61; *Di Vito, supra*, 361 F.2d at 939. To obtain the relief requested under Rule 60(b)(3), Nodal must demonstrate not only that defendants' promise to return documents was a condition of settlement and that defendants breached that agreement, but that defendants lied when they made this promise to induce Nodal to settle the case. See, e.g., *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1207 (7th Cir. 1998).

The so-called "catch-all" provision of Rule 60(b) has been held to authorize a court to vacate a dismissal order premised upon settlement if there is "substantial non-compliance with or

4

breach" of the settlement agreement.[2] *See Neuberg v. Michael Reese Hosp. Found.*, 123 F.3d 951, 954 (7th Cir. 1997) (citing cases and noting that the Seventh Circuit has suggested in dicta it would follow same rule). *See also Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 378 (1994) (collecting cases and distinguishing the renewal of a case that has been settled and dismissed from the enforcement of the settlement agreement in such a case; the latter "requires its own basis for jurisdiction").[3]

Defendants contend that we lack jurisdiction to hear Nodal's Rule 60(b) motion because Nodal is not, as captioned, an Illinois corporation. While defendants did not pursue that argument to its logical conclusion, i.e., that we lack jurisdiction over the entire case, Nodal has admitted its mistake and informed us that Illinois is its principal place of business, not its place of incorporation. Therefore, jurisdiction over Nodal's motion to vacate the judgment in this action is proper.

First, Nodal presents no evidence to support its attorney's assertion that defendants' agreement to return Nodal's documents was one of the conditions of settlement. Even if the agreement to return documents was, as Samdal claims, made at the same time as or before the parties agreed on settlement terms, the undisputed facts suggest that this agreement was not a condition of settlement. The return of documents was not a term of any of the settlement documents and the release plainly states that no other inducement not mentioned therein had been offered or relied upon in reaching settlement.[4] Samdal's request, two months after defendants

---

[2] Rule 60(b)(6) provides that a court may vacate an order for "any other reason justifying relief from the operation of the judgment."

[3] We note that we did not explicitly retain jurisdiction to oversee the settlement of this action. We thus lack the authority to grant the alternative relief, amounting to enforcement of the alleged agreement to return documents, requested by Nodal. *See Kokkonen,* 511 U.S. at 382.

[4] Nodal's argument that the alleged promise to return documents was indeed the "only" obligation incurred by defendants as part of the settlement ignores the main consideration underlying the release: defendants' release of all of their claims against Nodal for legal fees in excess of the amount that Nodal agreed to pay as part of the settlement.

5

executed the release, for "written confirmation" of the agreement regarding documents suggests that defendants' promise was collateral to the settlement. It is unclear why Samdal waited two months to seek written confirmation of what he now claims is defendants' "only" obligation under the settlement agreement. Moreover, the fact that written confirmation was sought in December casts doubt upon Samdal's statements that the agreement occurred in October. It is not inconceivable given the sequence of events, as revealed in the parties' correspondence from October of 2000 to March of 2001, that (as defendants suggest) Nodal did not raise this issue until it realized it might need to find a way to avoid its promise to pay under the settlement agreement.

Second, even if we accept Nodal's unsubstantiated assertions that defendants agreed to return its original documents as part of the settlement of this case, we are not at all certain that defendants have breached this agreement. Nodal's summary of the facts asserts that, "despite defendants' earlier claim that they 'did not possess any original documents' (Exhibit 8), they now [on March 8, 2001] admitted to having 'several boxes' of Nodal documents and were simply refusing to produce them." Pl.'s ¶ 13, citing Samdal Decl., Ex. 2 at ¶ 15. Nodal's mischaracterization of defendants' statements cannot obscure its own evidence of what defendants actually said: the parties' correspondence reveals that defendants did not change their position with respect to possession of documents. Contrary to Nodal's assertion, there is no evidence that defendants ever admitted possessing any of the relevant documents or that they have refused to return the documents to Nodal; defendants repeatedly informed Nodal that they did not possess any original Nodal documents. Defendants cannot be said to have broken their promise to return original documents if they have no documents to return.

When Nodal expressed disbelief of defendants' claim not to have documents, defendants offered Nodal the opportunity to review defendants' files pertaining to their representation of

6

Nodal. We cannot agree with Nodal that this offer constituted an admission that defendants possess original documents. Rather, it seems calculated to help assure Nodal that none of the original documents Nodal seeks are among defendants' records. Nodal has not indicated that defendants have withdrawn their offer, nor has Nodal articulated a motive behind defendants' alleged wrongful retention of documents. Nodal cannot credibly suggest that defendants are withholding documents before first accepting defendants' invitation to review their files.

However, assuming *arguendo* that defendants made an agreement as part of settlement and breached it by retaining documents belonging to Nodal, the allegations Nodal makes in the instant motion are insufficient to establish fraud by clear and convincing evidence. Nodal argues that "defendants' recent letters—first claiming not to possess documents and then later claiming no obligation to produce documents that they admit to having—demonstrates that the defendants' promises were false." Pl.'s ¶ 18. Again, Nodal has mischaracterized defendants' statements. There is nothing to corroborate Nodal's conclusory allegations that defendants' lawyer induced Nodal to settle by falsely offering to return Nodal's documents—not even Nodal's proffered evidence supports its assertions. Even if defendants breached their agreement to return documents, there is no evidence of fraud in their promise to do so. Nodal's contentions that the agreement to return documents was a material aspect of the settlement and that Nodal relied upon this promise are belied by the absence of any mention of documents in the release and the clear statement that the release contains the sole inducements to settlement. The delay in seeking written confirmation of the agreement regarding documents is further proof that this promise played no vital role in persuading Nodal to settle. Nodal's conclusory allegations of the existence of fraud "unaccompanied by a statement of clear and convincing probative facts which support such belief do not serve to raise the issue of the existence of fraud, much less to carry the burden of resolving that issue." *Di Vito*, 361 F.2d at 939.

Based upon our determination that the defendants' agreement to return Nodal's original documents was not part of the settlement of this case and that, even taking Nodal's factual allegations as true, Nodal has not sufficiently alleged that the defendants breached the agreement, we decline to vacate the dismissal order under Rule 60(b)(6) on the grounds that the settlement agreement has been repudiated. Even if Nodal could demonstrate "substantial non-compliance" with the settlement agreement underlying our dismissal of this case, we would hesitate to conduct an inquiry into the existence of an alleged oral component of the agreement when we have not expressly retained jurisdiction to oversee this settlement agreement. *See Kokkonen, supra,* 511 U.S. at 378, 381-82 (holding courts lack jurisdiction to enforce settlement agreement unless they explicitly retain jurisdiction over the settlement contract or embody the terms in dismissal order); *Neuberg,* 123 F.3d at 955 ("A dispute over the interpretation of the settlement agreement is a legal matter distinct from the underlying litigation."). If Nodal truly believes that the defendants have wrongfully retained its documents, nothing prevents it from bringing suit to enforce the alleged agreement in a court of appropriate jurisdiction. *See Neuberg,* 123 F.3d at 954, 956.

*Conclusion*

For the foregoing reasons, Nodal's Rule 60(b) motion to vacate our previous dismissal order is denied. The parties shall bear their own costs associated with this motion. It is so ordered.

---
MARVIN E. ASPEN
United States District Judge

Dated 6/12/01